UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO MADRIGAL OCHOA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | Case No. CV 13-5307-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On July 29, 2013, plaintiff Guillermo Ochoa filed a complaint against the Commissioner of Social Security Administration ("Commissioner"), seeking a review of a denial of Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the objective medical evidence supported the Administrative Law Judge's ("ALJ")

determination at step two that plaintiff did not suffer from a severe combination of impairments.

Having carefully studied the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred in finding plaintiff's mental impairment to be non-severe at step two. Therefore, the court remands this matter to the Commissioner of the Social Security Administration in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was sixty years old on his alleged disability onset date, has a first grade education. AR 52, 149, 153, 173. Plaintiff has past relevant work experience as a furniture upholsterer helper. AR 72, 173.

On October 7, 2010 plaintiff applied for DIB and SSI. AR 149, 153. Plaintiff was denied initially, after which he requested a hearing. AR 42.

On April 25, 2012, plaintiff, represented by council, appeared and testified at a hearing before the ALJ. AR 48-71. David Rinehart, a vocational expert, also testified. AR 71-74.

On June 25, 2012, the ALJ denied plaintiff's claim for disability benefits. AR 26-33. Applying the well known five-step sequential evaluation process, the ALJ found, at step one, that the plaintiff has not engaged in substantial gainful activity since his October 6, 2010 alleged onset date. AR 28.

At step two, the ALJ found plaintiff suffers from the following medically determinable impairments: non-insulin dependent diabetes mellitus; history of multiple joint pain; prostatitis; diverticulitis; left heel spur; plantar fasciitis; sleep disorder; history of varicose veins, status post multiple ligation; and depressive disorder. *Id*. But the ALJ found plaintiff does not have a severe impairment or combination of impairments that has significantly limited (or is expected to

significantly limit) plaintiff's ability to work for twelve consecutive months. AR 28-29. Accordingly, the ALJ did not proceed beyond step two and determined plaintiff was not disabled as defined in the Social Security Act. AR 28-33.

Plaintiff filed a timely application for review, which was denied by the Appeals Council. AR 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing

3

the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends that the objective medical evidence supports a finding of a "severe" impairment at step two. Pl. Mem. at 10-12. Specifically, plaintiff contends that the objective medical evidence supports both a finding of severe physical impairment and severe mental impairment. *Id*.

The inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The step two inquiry is defined as "'a de minimis screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). "At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90. "Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290. The ALJ is also "required to consider the claimant's subjective symptoms . . . in determining severity." *Id.*

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[1] *Smolen*, 80 F.3d at 1290

---

[1] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Edlund*, 253 F.3d at 1159 (internal citations omitted).

(internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28).[2] "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.* In addition, "'if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* (quoting SSR 85-28) (brackets omitted).

**A.     The ALJ Properly Found Plaintiff Does Not Suffer from a Severe Physical Impairment**

Plaintiff contends that the objective medical evidence from his physicians supports a finding of "severe" at step two. Pl. Mem. at 10-12. First this required the ALJ to make a determination regarding the contradicting medical evidence.

**1.     The ALJ Properly Rejected the Opinions of Dr. Donahue and Dr. Ella-Tamayo**

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

5

among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 494.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen*, 80 F.3d at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

        **a.**    **Dr. Donahue**

The ALJ rejected the opinion of Dr. Donahue, plaintiff's workers' compensation orthopedic surgeon, as: (1) his treatment notes were cursory, and his opinion on plaintiff's limitations lacked objective medical foundation; (2) a November 12, 2010 somatosensory test on plaintiff's back and nerves contradicted Dr. Donahue's opinion; (3) July 31, 2010 and September 19, 2010 physical

examinations by two different Harbor-UCLA physicians contradicted Dr. Donahue's opinion; and (4) plaintiff's primary treating physician failed to note shoulder, hand, wrist, knee or ankle/foot problems as contained in Dr. Donahue's opinion. AR 30-31.

First, the ALJ rejected Dr. Donahue's opinion as his treatment notes were cursory, and his opinion on plaintiff's total disability lacked objective medical foundation. AR 30. The ALJ noted that Dr. Donahue ordered sixteen x-rays and MRIs in October 2010, but none of the x-rays or MRIs is in the record, and Dr. Donahue failed to reference these in his subsequent report. AR 30, *see* AR 539-41, 563-64. Indeed, Dr. Donahue's only references to imaging studies were to those revealing normal results or results that did not support the bulk of his findings. AR 30, 533-34, 539-40. Dr. Donahue's failure to discuss the evidence of the clinical testing he ordered, presumably finding them necessary to issue an opinion, renders his opinion conclusory. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).) Accordingly, this was a specific and legitimate for rejecting the opinion of Dr. Donahue.

Second, the ALJ noted the limitations opined by Dr. Donahue contradict Dr. Yury Furman's somatosensory test. AR 30. Dr. Furman conducted a somatosensory test on November 12, 2010 on plaintiff's C5, C6, C7, C8, L3, L4, L5, and S1 nerve roots which revealed normal functioning. AR 396. Given objective testing contradicts the unsubstantiated opinion of Dr. Donahue, this constitutes a specific and legitimate for rejecting Dr. Donahue's opinion.

Third, the ALJ noted July 31, 2010 and September 19, 2010 physical examinations at Harbor-ULCA medical center both revealed no upper or lower extremity abnormalities. AR 31, 283, 294. Dr. Donahue's opinion on plaintiff's

7

extremity limitations made one month later therefore contradict two independent physical examinations, "which calls into question the accuracy of Dr. Donahue's findings." AR 31. This was a specific and legitimate reason for rejecting the opinion of Dr. Donahue.

Finally, the ALJ notes plaintiff's treating physician, Dr. Jamie Vivas, did not report any of plaintiff's purported shoulder, hand, wrist, knee or ankle/foot problems contained in Dr. Donahue's opinion, and with respect to plaintiff's elbow pain simply diagnosed him with tennis elbow that was improving as of July 2010. AR 30-31, 304-05. As plaintiff's primary treating physician employed to heal, the ALJ was entitled to give great weight to Dr. Vivas. *See Smolen*, 80 F.3d at 1285 ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.") (Citations omitted). Accordingly, this was a specific and legitimate for rejecting the opinion of Dr. Donahue.

In sum, Dr. Donahue's opinion regarding plaintiff's limitations was contradicted by two independent Harbor-UCLA physicians, Dr. Furman's November 12, 2010 somatosensory test, and Dr. Vivas, plaintiff's primary treating physician. Furthermore, as Dr. Donahue referenced no objective clinical findings, the ALJ appropriately rejected his opinion as conclusory. Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Donahue's opinion.

        **b.**    **Dr. Ella-Tamayo**

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Rocely Ella-Tamayo, a consultative examining physician. Pl. Mem. at 10. Dr. Ella-Tamayo opined that plaintiff was limited to "medium work" in rendering her opinion. AR 369. But the ALJ noted Dr. Ella-Tamayo's testing revealed a normal gait, a normal sensory exam, and motor strength of 5/5. AR 31-32, 369. As this

objective testing revealed no limitations, the ALJ reasoned Dr. Ella-Tamayo's opinion that plaintiff was limited to "medium work" may have been based on plaintiff's subjective complaints. AR 31-32. The ALJ largely rejected plaintiff's complaints as not fully credible (AR 32), and plaintiff does not contest this finding. The lack of support for Dr. Ella-Tamayo's assessment beyond plaintiff's discredited subjective complaints was a specific and legitimate reason for rejecting that assessment. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("it is reasonable to discount a physician's prescription that was based on [a claimant's] less than credible statements"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (citations omitted) .

     **2.**     **Substantial Evidence Supported the ALJ's Finding of No Severe Physical Impairment**

As discussed above, the ALJ properly rejected the opinions of Dr. Donahue and Dr. Ella-Tamayo. There was no medical of evidence of record from the remaining four physicians to support the severity of plaintiff's alleged conditions. In fact, plaintiffs's treatment history supports a finding at step two of no severe physical impairment.

The ALJ noted plaintiff's diabetes was stable (AR 305), diverticulitis was treated and successfully managed with fiber supplementation (AR 282, 286), enlarged prostate was managed with medication (AR 306, 314), plantar fasciitis was treated in 2010 and had not recurred (AR 300), and insomnia was treated and plaintiff was then sleeping six to seven hours a night (AR 420-21, 425). AR 31. Plaintiff's medically determinable conditions were therefore treated conservatively, and no physician (apart from those the ALJ discounted) opined that they would have anything more than a minimal effect on plaintiff's ability to

work. Plaintiff offers no support – beyond citing to Dr. Donahue's properly rejected opinion – for his conclusory contention that the objective medical evidence supports a finding of severe at step two. *See* Pl. Mem. at 6-7, 10.

Accordingly, the ALJ properly found plaintiff's physical impairments have no more than a minimal effect on his ability to work. AR 28-29.

### B. The ALJ Erred in Finding Plaintiff Does Not Suffer from a Severe Mental Impairment

Plaintiff contends that "the record makes clear Mr. Ochoa suffers from moderate psychological limitations." Pl. Mem. at 11. Because the ALJ found plaintiff has a medically determinable mental impairment, the ALJ properly "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders," which are known as the "paragraph B" criteria. AR 32. The four areas of function, in which the ALJ must rate the degree of functional limitation, are: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3).

First, in the activities of daily living, the ALJ noted plaintiff: cooks, washes dishes, shops, exercises, and drives, but does not do laundry or housework, and accordingly has only mild limitations. AR 32, 366. Second, in the area of social functioning, the ALJ noted plaintiff lives with his wife and daughter, and describes his home life as "good." AR 32, 478. Although the ALJ found little evidence of social functioning disabilities, he gave plaintiff "some credit" and so found mild limitation in this area. AR 32. Third, in the area of concentration, persistence, or pace, the ALJ noted plaintiff reads and works around the house. AR 33, 60-61, 366. Although there was again little evidence of difficulties, in light of plaintiff's depressive disorder, the ALJ found mild limitation in this area. AR 33. Fourth, in the area of episodes of decompensation, the ALJ found there was no evidence that plaintiff suffered extended episodes of decompensation. *Id*.

In making this assessment, the ALJ gave "significant weight" to the opinion of the worker's compensation psychologist, Dr. Gunilla Karlsson, that "no prophylactic work restrictions are indicated and a return to the labor market would be most beneficial to [plaintiff]." AR 32; *see* AR 487, 491. In examining plaintiff, Dr. Karlsson opined that plaintiff had mild impairment in his ability to perform activities of daily living, mild to moderate impairments in the areas of social functioning, concentration, persistence, and pace, and moderate impairment related to episodes of decompensation. AR 489.

While the ALJ claimed to give "significant weight" to at least some portion of Dr. Karlsson's opinion, his findings of mild mental limitations in the areas of social functioning and concentration, persistence, and pace contradict Dr. Karlsson's opinion of mild to moderate impairments in those areas. Further, the ALJ's finding of no evidence of extended episodes of decompensation directly contradicts Dr. Karlsson's opinion that plaintiff suffers moderate impairment related to episodes of decompensation.

Furthermore, while the ALJ correctly notes that Dr. Karlsson opined that prophylactic work restrictions are not indicated by plaintiff's mental limitations, Dr. Karlsson also opined that "there are psychiatric reasons why this patient may be unable to return to his usual and customary work." AR 491. Dr. Karlsson further expressed concern that, if plaintiff were to return to any work, his condition would worsen:

> If and when he attempts to return to a normal and regular work situation, his symptoms would be expected to worsen so that there would be an increase in his level of symptoms that would correlate with a higher level of observed emotional impairment. His presentation in an employment application interview would probably be significantly hampered by visible anxiety, insecurity, and damaged self-esteem.

*Id.* These findings also contradict the ALJ's finding of a non-severe mental impairment, as Dr. Karlsson's opinion here clearly indicates that plaintiff's mental impairment has more than a minimal effect on plaintiff's ability to work.

Particularly, as Dr. Karlsson was the only psychologist of record, the ALJ was required to state clear and convincing reasons for rejecting any portion of the opinion. *See Lester*, 81 F.3d at 830 (if a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight). While the ALJ may have concluded plaintiff's daily activities – which were detailed by the ALJ in his opinion – contradict Dr. Karlsson's opinion, the ALJ did not articulate such a finding. The court's review is limited to the reasons actually provided by the ALJ in his decision for accepting or rejecting a physician's opinion. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citation omitted)). Moreover, the ALJ did not specify which portions of Dr. Karlsson's opinion he rejected; indeed, he did not acknowledge rejecting any portion.

As the ALJ did not meet his burden of providing clear and convincing reasons for rejecting portions of Dr. Karlsson's opinion, he erred in his step two determination that contradicted Dr. Karlsson's opinion.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

turns upon their likely utility).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred at step two.  On remand, the ALJ shall reconsider all portions of Dr. Karlsson opinion and either credit the opinion or provide clear and convincing reasons supported by substantial evidence for rejecting it or portions of it.  The ALJ shall then determine at step two whether plaintiff has a severe impairment or severe combination of impairments.  To the extent necessary after his step two determination, the ALJ shall proceed through steps three, four, and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: August 4, 2014

SHERI PYM
United States Magistrate Judge